COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Senior Judge Bumgardner
Argued at Richmond, Virginia


LATROY A. HARPER

                                                OPINION BY
v.        Record No. 2441-07-2            JUDGE JAMES W. HALEY, JR.
                                                 APRIL 28, 2009
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                           Bradley B. Cavedo, Judge

          Jessica M. Bulos, Assistant Appellate Defender (Office of the
          Appellate Defender, on brief), for appellant.

          Eugene Murphy, Senior Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


        Latroy A. Harper ("Harper") entered guilty pleas to aggravated sexual battery in violation

of Code § 18.2-67.3(A) and taking indecent liberties with a minor child in violation of Code

§ 18.2-370(A)(1).  He appeals the prison sentences ordered by the trial court.  The only question

presented is whether the Confrontation Clause of the Sixth Amendment to the United States

Constitution applies to post-trial sentencing proceedings.  Harper argues that the United States

Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), has effectively

overruled our earlier decision in Moses v. Commonwealth, 27 Va. App. 293, 300, 498 S.E.2d

451, 455 (1998), holding that the Confrontation Clause does not apply to sentencing proceedings.

Our review of the relevant decisions persuades us that, though Crawford substantially changed

the way courts must analyze claims under the Confrontation Clause, neither Crawford nor its

progeny have expanded the applicable scope of the right of confrontation to sentencing hearings.

Thus, we conclude that <u>Moses</u> controls this case and that it also compels us to affirm Harper's sentences.[1]

FACTS

On May 10, 2007, Harper entered guilty pleas to the indictments. When asked for the factual basis for Harper's pleas of guilty, the Assistant Commonwealth's Attorney made a proffer of what she believed the Commonwealth's evidence would have shown if the case had gone to trial. The proffer was that, on September 13, 2006, Harper's sister asked Harper to watch her eleven-year-old son, S.D. When she returned and opened the door to Harper's bedroom, she saw S.D. with Harper. She also saw Harper pulling up his pants. Harper and his sister began to argue, and Harper left the house through his bedroom window. S.D. later told the investigating police officers that Harper had grabbed him, pulled him into his bedroom, positioned him facedown on the bed, pulled his pants down, and attempted to have anal sex with him. When the police arrived, they questioned Harper about the incident. After receiving warnings pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), Harper told the police that S.D. wanted to know what sex was like and that Harper was about to show him when they were interrupted by his sister walking into his bedroom. At his guilty plea hearing, the trial judge asked Harper's defense counsel whether Harper had any objection to the Commonwealth's proffer. Though Harper disputed the Commonwealth's account as to a collateral matter,[2] he accepted as true all of the portions of the Commonwealth's proffer mentioned above.

---

[1] We need not address whether, even if the Confrontation Clause applied to sentencing hearings, the challenged statements would constitute testimonial hearsay in violation of <u>Crawford</u>.

[2] The Commonwealth proffered that Harper hit his sister first during the argument, which Harper denied. This was the only event disputed by the parties in the trial court. It is also irrelevant to Harper's guilt as to the sex offenses to which he entered guilty pleas and to the legal question presented.

On September 26, 2007, Harper appeared at his sentencing hearing. Both Harper and the Commonwealth presented evidence and argument. The Commonwealth's sentencing evidence included testimony from Harper's sister. She described the difficulties that Harper's offense had created in their family. She also stated that S.D. did not like Harper, S.D. did not want to be around Harper, and that "[S.D.] don't even want him living." Harper objected to these statements, arguing that his Sixth Amendment right to confront the witnesses against him meant that S.D.'s out-of-court testimonial statement could not be introduced against him because Harper had had no prior opportunity for cross-examination of S.D. The trial court overruled Harper's objection and sentenced him to a term of ten years imprisonment, with six years suspended, on the charge of aggravated sexual battery and ten years imprisonment, all suspended, on the charge of taking indecent liberties with a minor child. This appeal followed.

ANALYSIS

We review *de novo* Harper's claim that his right to confrontation was violated. Dickens v. Commonwealth, 52 Va. App. 412, 417, 663 S.E.2d 548, 550 (2008). There is no dispute that the alleged constitutional violation of which Harper complains took place during a sentencing hearing. There is, likewise, no dispute that our decision in Moses, 27 Va. App. 293, 498 S.E.2d 451, concluded that the Confrontation Clause of the Sixth Amendment does not apply to sentencing proceedings.

> Defendant next contends that the Commonwealth's refusal to identify all its sources violated her right to confrontation under the Sixth Amendment. The United States Supreme Court has stated "the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." Ritchie v. Pennsylvania, 480 U.S. 39, 52 (1987) (citing California v. Green, 399 U.S. 149, 157 (1970)). In Ritchie, the defendant was denied access during pretrial discovery to investigative files which contained statements by the victim and information about witnesses. The Court concluded the Sixth Amendment was not offended because a defendant has no right to confront witnesses outside of trial. See

- 3 -

> Maryland v. Craig, 497 U.S. 836, 849 (1990) ("'the Confrontation Clause reflects a preference for face-to-face confrontation at trial'"); Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996). Therefore, application of the Confrontation Clause to the post-trial sentencing proceedings is inappropriate.

Id. at 300-01, 498 S.E.2d at 455 (emphasis in original). The principle of *stare decisis* applies to panel decisions of the Court of Appeals. Commonwealth v. Burns, 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990). Panel decisions may be overruled through the *en banc* hearing process, see id., but not by other panel decisions. Accordingly, we may reverse Harper's sentences only if Harper is correct that the United States Supreme Court has already overruled Moses in Crawford.

Before Crawford, the United States Supreme Court held that hearsay statements were admissible, and did not violate the Confrontation Clause, if the hearsay statements bore adequate "indicia of reliability." Ohio v. Roberts, 448 U.S. 56, 66 (1980). An out-of-court statement's reliability was considered adequate if the statement fell within a "firmly rooted hearsay exception" or if the statement was accompanied by "a showing of particularized guarantees of trustworthiness." Id.

The Supreme Court overruled Roberts in Crawford. Crawford, 541 U.S. at 61-65. In Crawford, the defendant stabbed a man and was tried for assault and attempted murder. Id. at 38. The defendant did not plead guilty, as Harper has done, but relied instead on a theory of self-defense. To refute the defendant's self-defense claim, during the guilt/innocence phase of Crawford's trial, the prosecution played a tape-recorded statement made to police by the defendant's wife, who could not testify at the trial because of Washington's statutory marital privilege. Id. Despite the finding of the Washington courts that the wife's statement showed particularized guarantees of trustworthiness pursuant to Roberts, the Supreme Court held that the prosecution's use of the wife's statement violated the defendant's right to confront witnesses against him under the Confrontation Clause of the Sixth Amendment. Id. at 68.

- 4 -

Part I of the <u>Crawford</u> opinion describes the facts of the case and the proceedings at Crawford's trial and in the Washington appellate courts. <u>Id.</u> at 38-42. Part II begins with the recognition that the Sixth Amendment's text does not settle the question, so an investigation into the history of the Confrontation Clause is necessary. <u>Id.</u> at 42-43. Sections A and B of Part II describe the confrontation right as it existed, respectively, in the common law of England and of the American colonies and early Republic, prior to and around the time of the ratification of the Sixth Amendment in 1791. <u>Id.</u> at 42-50.

Part III draws two inferences from this history. The first was that the goal of the Confrontation Clause was to protect the accused from civil law criminal procedure practices, particularly the *ex parte* examinations of witnesses by public officials. <u>Id.</u> at 51. The second inference was that the founding generation understood the Confrontation Clause to prohibit the admission in evidence of testimonial statements of witnesses who did not appear for trial, unless the witness was unavailable and the defendant had a prior opportunity for cross-examination. <u>Id.</u> at 53-54. In Part IV, the Court reviewed its own prior cases interpreting the Confrontation Clause, and found that "[o]ur case law has been largely consistent with these two principles." <u>Id.</u> at 57.

Part V begins: "[a]lthough the results of our decisions have generally been faithful to the original meaning of the Confrontation Clause, the same cannot be said of our rationales." <u>Id.</u> at 60. What follows is a forceful criticism of the Court's Confrontation Clause jurisprudence under <u>Roberts</u>. The Court attacks the <u>Roberts</u> standard for being highly unpredictable in practice and for departing from the original understanding of the Confrontation Clause. Specifically, the Court emphasizes that <u>Roberts</u> permits admission of exactly the kind of *ex parte* testimonial statements that the Confrontation Clause was meant to exclude "based on a mere judicial determination of reliability. <u>Id.</u> at 62.

> Admitting statements deemed reliable by a judge is fundamentally
> at odds with the right of confrontation. To be sure, the Clause's
> ultimate goal is to ensure reliability of evidence, but it is a
> procedural rather than a substantive guarantee. It commands, not
> that evidence be reliable, but that reliability be assessed in a
> particular manner: by testing in the crucible of cross-examination.

Id. at 61. "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." Id. at 62. "Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.

We have reviewed the Crawford opinion in some detail because Harper's reliance on Crawford is the essential question before us. And we find nothing in that opinion that supports Harper's claim that Crawford extended the applicable scope of the Confrontation Clause of the Sixth Amendment to sentencing proceedings. The application of the Confrontation Clause to sentencing was quite clearly not the issue before the Court. After all, the prosecution played the recorded statements of the defendant's wife during the guilt/innocence phase of the defendant's trial. Id. at 40-41. Nor does the Court's analysis support Harper's position. The Crawford opinion focuses on the necessity of replacing the Roberts standard with what the Court considers to be the original understanding of what the confrontation right *is*, that is, a procedural guarantee to the accused that he may challenge testimonial evidence against him through the process of cross-examination. The opinion does not contain a similar revision of the type of legal proceedings to which the Confrontation Clause applies.

Moreover, the early English and American cases cited in Part II of Crawford, particularly Raleigh's Case, 2 How. St. Tr. 1, 15-16 (1603), provide the foundation for the Court's argument that the Roberts standard reflected a fundamentally mistaken view of the Confrontation Clause. If any of these early cases applied the confrontation right to sentencing proceedings, the

Crawford opinion does not mention it.  It would be strange indeed for an opinion so anchored in history, and attaching such importance to the original understanding of the founding generation, to apply the Confrontation Clause to sentencing proceedings without first seeking to determine whether, prior to the ratification of the Sixth Amendment, there existed any precedents to support such a view.

That Crawford has not overruled our decision in Moses is also apparent from the way the United States Supreme Court has treated its own earlier decision in Williams v. New York, 337 U.S. 241 (1949).  Pursuant to statute, the trial judge in Williams had the discretion to impose the jury's recommendation of life imprisonment or a death sentence.  Id. at 245.  "In giving his reasons for imposing the death sentence the judge discussed in open court the evidence upon which the jury had convicted stating that this evidence had been considered in light of additional information obtained through the court's 'probation department, and other sources.'"  Id. at 242 (quoting People v. Williams, 83 N.E.2d 698, 699 (N.Y. 1949)).  The defendant argued that his sentence was imposed based on information "supplied by witnesses with whom the accused had not been confronted and as to whom he had no opportunity for cross-examination or rebuttal." Id. at 243.  Williams affirmed the defendant's conviction.

> Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations.  But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.

Id. at 246.  If Williams remains good law, then it is clearly a serious obstacle to Harper's claim that his right to confront and cross-examine witnesses applied to his sentencing proceeding.  Yet the United States Supreme Court has continued to treat Williams as a valid precedent, *even in cases decided since* Crawford.  See United States v. Booker, 543 U.S. 220, 233 (2005); Blakely

v. Washington, 542 U.S. 296, 304 (2004). We also believe that, if the Court had intended that its Crawford decision should overrule Williams, it would have clearly expressed that intention. Yet Crawford does not mention Williams at all. "Crawford does not explicitly overrule Williams." United States v. Littlesun, 444 F.3d 1196, 1200 (9th Cir. 2006).

We further note that each United States Court of Appeals that has considered the application of Crawford to sentencing has reached the same conclusion. "Crawford does not apply to sentencing." United States v. Monteiro, 417 F.3d 208, 215 (1st Cir. 2005). See also United States v. Luciano, 414 F.3d 174, 178-80 (1st Cir. 2005) ("Nothing in Crawford requires us to alter our previous conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing."); United States v. Martinez, 413 F.3d 239, 242 (2d Cir. 2005) ("Both the Supreme Court and this Court, however, have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings."); United States v. Stone, 432 F.3d 651, 654 (6th Cir. 2005) ("Because Crawford was concerned only with testimonial evidence introduced at trial, Crawford does not change our long-settled rule that the confrontation clause does not apply in sentencing proceedings."); United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005) (same); United States v. Brown, 430 F.3d 942, 944 (8th Cir. 2005) (same); Littlesun, 444 F.3d at 1200 (same); United States v. Bustamante, 454 F.3d 1200, 1202-03 (10th Cir. 2006) (same). "The Crawford opinion does not state that its rule applies at sentencing; it does not refer to sentencing. While that rule may eventually be extended to the sentencing context, that has not happened yet." United States v. Chau, 426 F.3d 1318, 1323 (11th Cir. 2005).

On brief, Harper attempts to support his position with authority from two other jurisdictions. See In re M.P., 220 S.W.3d 99 (Tex. App. 2007); Rodgers v. State, 948 So.2d 655 (Fla. 2006). It is true that these cases apply a confrontation right to sentencing under specific

circumstances. But neither adopts the view that it was Crawford or any other United States Supreme Court case decided after Moses that here compels this application: accordingly, Harper's reliance is misplaced. Unlike Harper's case, Rodgers was a death penalty case, id. at 659, and the decision rested its application of Crawford to sentencing, at least in part, on the "'uncontroverted proposition that the Sixth Amendment right of confrontation applies to all three phases of the *capital trial*.'" Id. at 663 (quoting Rodriguez v. State, 753 So.2d 29, 43 (Fla. 2000)) (emphasis added). Compare United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005) (Crawford does not extend to non-capital sentencing), with Proffitt v. Wainwright, 685 F.2d 1227, 1254-55 (11th Cir. 1982) (right to confrontation applies to capital sentencing).

In re M.P. at least endorses the view that the Confrontation Clause should apply to the defendant's sister's testimony regarding S.D.'s feelings about Harper:

> We do conclude, however, that at a minimum an adult criminal defendant has a constitutional right of confrontation at sentencing: (1) in cases in which the State seeks imposition of a sentence on the basis of findings beyond those "reflected in the jury verdict or admitted by the defendant"; see Booker, 543 U.S. at 232, 125 S. Ct. at 749; [State v.] McGill, 140 P.3d [930,] 942 [(Ariz. 2006)]; and *(2) whenever the State calls a witness to testify at punishment.*

In re M.P., 220 S.W.3d at 108 (emphasis added). However, In re M.P. rests proposition (2), not on Crawford, but on Illinois v. Allen, 397 U.S. 337 (1970), and two Texas decisions. None of these cases can possibly have overruled this Court's decision in Moses; Allen was decided eighteen years before Moses and the Texas cases are not binding on this Court. As far as we can tell, no court, in any state, has endorsed the position necessary for our reversal of Harper's conviction, i.e. that Crawford and its progeny have extended the applicable scope of the Confrontation Clause of the Sixth Amendment to sentencing proceedings.

Harper also relies on Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973), for the proposition that a confrontation right exists at a probation revocation hearing. If a convicted defendant

enjoys a right to confrontation before the court may order him to serve portions of a previously suspended sentence, Harper continues, it follows that the right to confrontation must apply at the original sentencing hearing as well. We reject this argument because its validity depends on the assumption that the right of confrontation applicable to probation revocation hearings, like the trial right of confrontation described in <u>Crawford</u>, invariably prohibits the admission into evidence of testimonial hearsay in the absence of a prior opportunity for cross-examination. It is clear that <u>Gagnon</u> did not impose a blanket prohibition on such hearsay. <u>See</u> <u>id.</u> at 782 n.5 ("While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in <u>Morrissey [v. Brewer</u>, 408 U.S. 471 (1972),] intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence."). Moreover, even post-<u>Crawford</u> Virginia decisions interpreting <u>Gagnon</u> mention the discretion of the trial judge to decide whether to allow hearsay testimony during the course of a probation violation hearing. "Thus, hearsay evidence, which would normally be inadmissible in a criminal trial, may be admitted into evidence in a revocation hearing based on the court's discretion." <u>Dickens</u>, 52 Va. App. at 421, 663 S.E.2d at 552.

CONCLUSION

For the foregoing reasons, we affirm Harper's sentences.

<u>Affirmed.</u>