COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Lorish and Senior Judge Annunziata

ANTHONY ALEXANDER NATALE

v.      Record No. 0789-21-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JULY 5, 2022

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

(David L. Hensley; Ryan L. Nuzzo; Gunter Hensley, P.C., on briefs),
for appellant.

(Jason S. Miyares, Attorney General; Tanner M. Russo, Assistant
Attorney General, on brief), for appellee.

Anthony Alexander Natale appeals his sentence after pleading guilty to second degree
murder, aggravated malicious wounding, and two counts of child abuse and neglect. Appellant
argues that the court abused its discretion "by imposing maximum and arbitrary sentences on all
counts despite the presentation of multiple and significant mitigating factors at sentencing."
Appellant also contends that the trial court erred by denying him "his right of confrontation" by
permitting the Commonwealth to introduce several hearsay statements of a co-defendant. After
examining the briefs and record in this case, the panel unanimously holds that oral argument is
unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).
We affirm the decision of the trial court.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). This standard requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On December 8, 2020, appellant pleaded guilty to second degree murder, aggravated malicious wounding, and two counts of child abuse and neglect. Before accepting appellant's guilty pleas, the trial court conducted a thorough colloquy to ensure that appellant was entering his pleas freely and voluntarily. The trial court informed appellant of the maximum punishment for each offense, and appellant affirmed his understanding that Virginia's Sentencing Guidelines are discretionary and that the court could deviate above or below the guidelines.

The Commonwealth proffered that had the case gone to trial, it would have proved that on August 2, 2019, appellant called 911 and reported that his son, A.N., was having difficulty breathing after swallowing water during a bath. When Frederick County Sheriff's Deputy Smallwood arrived minutes later, appellant led him into a back bedroom in the apartment. There, Deputy Smallwood saw Sierra Pendleton, A.N.'s mother, I.P., Pendleton's four-year-old son from a previous relationship, and A.N. A.N. was unconscious, dry to the touch, and had bruises around his right eye, head, arms, and legs. Deputy Smallwood and other deputies noted makeup on A.N.'s face. I.P. appeared withdrawn, malnourished, and bruised on his face and body.

Emergency medical personnel transported A.N. to Winchester Medical Center, where doctors determined that the child had not inhaled any water. After being airlifted to a Fairfax

hospital, A.N. was pronounced dead on August 4, 2019. Following an autopsy, doctors concluded that A.N.'s cause of death was "blunt force trauma to head, neck, torso, and extremities." I.P. also was examined at Winchester Medical Center, where a forensic nurse described his injuries as "concerning for non-accidental trauma/abuse."

When deputies questioned appellant and Pendleton at the apartment, they gave inconsistent accounts of how A.N. sustained his injuries. Pendleton later reported that three days earlier, appellant had injured A.N. On the morning of April 2, appellant became angry when A.N. was "beginning to become fussy," and grabbed A.N. and applied pressure to his neck. When Pendleton tried to intervene, appellant pushed her to the ground. Appellant twice threw A.N. against a wall and then threw him to the floor, at which point A.N. lost consciousness. Pendleton reported that appellant had been physically abusing her and both children for "an extended period of time."

The police seized appellant's and Pendleton's cell phones. The phones contained numerous videos documenting abuse A.N. and I.P. suffered in the weeks preceding A.N.'s death. The videos depicted appellant physically and psychologically abusing I.P., including berating the boy, beating him, and throwing him across a room. Appellant also exposed his penis, visibly upsetting the child. In other videos, appellant is seen throwing A.N. "with such force that the baby looks like a ragdoll and is clearly subjected to motions and movement that could cause injury."

The police also examined the phones for internet browser history. Beginning around 11:00 a.m. on August 2, both phones show searches for terms such as "Baby not responding," "Unresponsive choking infant," "Signs of death of infants," and "Baby making breathing sounds but won't wake up." Pendleton later admitted that after A.N. lost consciousness, she and appellant conducted the internet searches and attempted to revive A.N. themselves, before finally calling for emergency help nine hours later.

Appellant agreed that the proffer reflected the Commonwealth's evidence in this case and that the statement outlined sufficient evidence for the trial court to convict him of the charges. The trial court found the evidence sufficient to prove appellant's guilt and that appellant freely, voluntarily, and intelligently entered his pleas. The court ordered a presentence report and the preparation of sentencing guidelines.

At the sentencing hearing, the Commonwealth presented evidence of the abuse appellant inflicted on both boys, including photographs of their injuries and malnourishment. The trial court also viewed the videos documenting the abuse. Expert testimony detailed the "constellation of injuries" A.N. suffered. The trial court also heard evidence of I.P.'s "numerous injuries in various stages of healing." Over appellant's objection, the trial court admitted Investigator Schwartz's testimony about his interview with Pendleton, a letter Pendleton had written about the events, and video footage from a police interview with her.

Appellant introduced evidence that he had been diagnosed with autism and other conditions as a child and grew up in a home marked by domestic violence and abuse. Appellant's IQ is "quite low" although "not sufficiently low to qualify for an intellectual disability diagnosis." Nevertheless, Dr. Sara Boyd, who examined appellant, concluded that it did not appear that appellant's conditions "would have significantly impaired his ability to recognize that the physical abuse of the children would harm them."

The trial court explained that it carefully considered all the evidence presented, including appellant's mitigation evidence. The trial court emphasized that it "place[d] very little, if any, consideration" on Pendleton's statements to the police or her letter. The trial court acknowledged appellant's mental health diagnoses but found that his condition did not excuse the sustained abuse he had inflicted on his young victims. The trial court found that A.N. "was quite tortured for the nine months that he was alive" and I.P. "was tortured for a year at least from documents that we

- 4 -

have." Recalling the videos and pictures, the trial court described appellant's conduct as "horrific and vile."

The trial court further found that the lengthy duration of the abuse distinguished this case from "a lot of other murder cases." The court noted that appellant had been "charged in 2018" with abuse and that "that was the warning shot across the bow to get help." Instead, appellant continued to abuse I.P. "to the point where his face was mush. He was swollen. He was malnourished. He was skin and bones. He was mentally not able to communicate." The trial court emphasized that had appellant attempted to seek aid for A.N. after inflicting the "mortal wound," the court would "obviously weigh that in [appellant's] favor in sentencing." Instead, though, "the child la[id] there feeling agony for hours while [appellant] and Ms. Pendleton search[ed] on [their] phone[s] what to do next." The trial court found that this was "an extremely aggravated case." Therefore, the trial court deviated upwards from the sentencing guidelines[1] and sentenced appellant to the maximum penalty for each offense. This appeal followed.

ANALYSIS

I.

Appellant argues that the trial court abused its discretion by sentencing him significantly above the recommended guidelines range without adequately considering his remorse, acceptance of responsibility, and evidence in mitigation. "Criminal sentencing decisions . . . are vested in the sound discretion of trial judges, not appellate judges." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "When exercising its discretionary power, . . . the trial court 'has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 563-64 (2016) (quoting *Lawlor v.*

---

[1] The guidelines recommended a sentence of seven years and five months to sixteen years and six months of incarceration.

*Commonwealth*, 285 Va. 187, 212-13 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* at 564 (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). Accordingly, we may reverse a trial court's sentencing decision "only upon clear evidence that [the decision] was not judicially sound[.]" *DeLuca v. Commonwealth*, 73 Va. App. 567, 575 (2021) (alterations in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)). "[I]n conducting our review, 'we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them . . . .'" *Id.* (ellipsis in original) (quoting *Branch v. Commonwealth*, 60 Va. App. 540, 548 (2012).

"Given this deferential standard of review, we will not interfere with the sentence so long as it 'was within the range set by the legislature' for the particular crime of which the defendant was convicted." *Fazili v. Commonwealth*, 71 Va. App. 239, 248 (2019) (quoting *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011)). The Virginia Criminal Sentencing Guidelines are "discretionary, rather than mandatory." *West v. Dir. of Dep't of Corr.*, 273 Va. 56, 65 (2007). They are "merely procedural tools to assist and guide a judge in the exercise of the judge's sentencing discretion." *Luttrell v. Commonwealth*, 42 Va. App. 461, 468 (2004). Thus, "the circuit court was required only to consider the sentencing guidelines before sentencing [appellant] and to file with the record of the case a written explanation of any departure from the indicated range of punishment." *West*, 273 Va. at 65 (citing Code § 19.2-298.01(B)). The task of sentencing "rest[s] heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Minh Duy Du*, 292 Va. at 563.

Here, the record demonstrates that the court considered the sentencing guidelines, the circumstances of the offenses, and appellant's history and characteristics—including his mental health. After considering all the evidence and explaining its reasoning on the record and in writing,

- 6 -

the court sentenced appellant within the statutory ranges set by the General Assembly. We do not assess the appropriate application of any aggravating or mitigating factors supporting a trial court's sentencing decision. It is within the trial court's purview to weigh any mitigating factors appellant presented. Appellant's sentence was "within the statutory range, and our task is complete." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018).

II.

Appellant contends that the trial court abused its discretion by admitting Pendleton's hearsay statements. He further argues that "denying [him] the right to confrontation in a sentencing hearing is a violation of due process of law." Appellant further asks that this Court "extend the protections of" *Crawford v. Washington*, 541 U.S. 36 (2004), "regarding confrontation to sentencing hearings."

Constitutional arguments present questions of law that we review *de novo*. *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020). "The United States Supreme Court has stated 'the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.'" *Harper v. Commonwealth*, 54 Va. App. 21, 24 (2009) (emphasis in original) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987)). This Court's "decision in *Moses* [*v. Commonwealth*], 27 Va. App. 293 [(1998)], concluded that the Confrontation Clause of the Sixth Amendment [of the United States Constitution] does not apply to sentencing . . . ." *Id.*

In *Crawford*, the United States Supreme Court held that an out-of-court statement by a witness that is testimonial is barred under the Confrontation Clause, unless the witness is unavailable, and the defendant had prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 59. Neither the United States Supreme Court's ruling in *Crawford* "nor its progeny have expanded the applicable scope of the right of confrontation to sentencing hearings."

*Harper*, 54 Va. App. at 22. We decline appellant's invitation to abandon existing precedent. Under the interpanel accord doctrine, "a decision from a panel of this Court 'cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court.'" *Sandoval v. Commonwealth*, 64 Va. App. 398, 419 (2015) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003)). Similarly, we do not have the authority to overrule decisions of the Supreme Court. *Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017).

It is true that "a defendant has a limited right of confrontation in criminal sentencing and any subsequent revocation proceedings under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Jenkins v. Commonwealth*, 71 Va. App. 334, 343 (2019); *see Moses*, 27 Va. App. at 301. "The rules of evidence are not 'strictly applied' in such proceedings, and hearsay is 'frequently admitted.'" *Jenkins*, 71 Va. App. at 343 (quoting *Henderson v. Commonwealth*, 285 Va. 318, 326 (2013)); *see McCullough v. Commonwealth*, 38 Va. App. 811, 816 (2002). "This broad rule of inclusion is tempered by the requirement that the information bear some indicia of reliability." *Moses*, 27 Va. App. at 302.

Accordingly, we find no abuse of discretion with the trial court's decision to admit the contested evidence.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed*.