PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

                                        OPINION BY
v.  Record No. 240843                    JUSTICE D. ARTHUR KELSEY
                                   NOVEMBER 20, 2025

DAVID MICHAEL JACKSON

FROM THE COURT OF APPEALS OF VIRGINIA

In this probation revocation case, a circuit court found that David Michael Jackson had violated the probation terms and suspension conditions imposed by one of his 20 felony convictions and one of his 7 misdemeanor convictions. During the hearing, the court twice stated that one resentencing factor it considered (among others) was that Jackson did not accept responsibility for his actions. Jackson interprets these statements to mean that the court punished him for pleading not guilty to his technical probation violations. The Court of Appeals agreed, holding that the circuit court "explicitly" had said it was doing so from the bench. *See Jackson v. Commonwealth*, Record No. 1065-23-4, 2024 Va. App. LEXIS 499, at *9 (Aug. 27, 2024) (unpublished). We disagree and reverse.

I.

A.

In 2018, Jackson pleaded guilty to charges of larceny with the intent to sell, a violation of Code § 18.2-108.01, and driving with a revoked license, third or subsequent offense, a violation of Code § 46.2-301. For the larceny conviction, the trial court imposed a 5-year sentence with 3 years and 10 months suspended conditioned upon 5 years of supervised probation. For the driving with a revoked license conviction, the court imposed a 12-month sentence with 11 months suspended conditioned upon 5 years of supervised probation. In May 2021, Jackson finished serving his active sentences and began supervised probation.

In November 2021, Jackson failed to report for three separate urine screens as instructed by his probation officer. Then, in February and March 2022, he tested positive for cocaine. As a result, the local community services board evaluated Jackson and recommended substance-abuse treatment. Jackson began treatment in March 2022. On April 12, Jackson failed to report for a urine screen. The next day he failed to report to his probation officer.

The probation officer issued a Major Violation Report ("MVR") on April 13 alleging that Jackson had violated probation Conditions 6 (non-compliance) and 8 (positive drug screen). On April 20, Jackson's probation officer contacted him. During that conversation, Jackson informed the probation officer that he had been involved in a motorcycle accident that had left him bedridden. (His mother later testified that the accident had occurred on April 14, a day after the MVR report.) The probation officer scheduled a phone check-in for May 19, but Jackson failed to call his probation officer as instructed.

On May 4, Jackson was charged with driving under a revoked or suspended license, and on May 9, he was arrested and detained for probation violation charges. He did not report this May 9 arrest or his release after detention to his probation officer as he had been instructed. The probation officer directed Jackson to report for an office appointment on June 1. Jackson failed to attend that appointment. In July, the substance-abuse-treatment program removed Jackson from the program due to lack of contact. The following month, his probation officer issued an addendum to the MVR alleging that Jackson had also violated probation Conditions 4 (reporting to probation) and 11 (absconding from supervision).

In October 2022, Jackson was arrested again and charged with multiple offenses, including assault and battery, abduction, destruction of property, failure to report a vehicle accident, reckless driving, driving on a revoked license, failure to appear, and construction fraud.

Jackson's probation officer issued a second addendum to the MVR, alleging additional violations of Condition 1 (obeying federal, state, and local laws). The probation officer filed additional addenda in December 2022 and March 2023, providing the circuit court with status updates on Jackson's pending charges and reporting his convictions for felony hit and run, misdemeanor construction fraud, and misdemeanor reckless driving.

B.

At his revocation hearing, Jackson pleaded guilty to the Condition 1 violations and not guilty to each of the four technical violations (Conditions 4, 6, 8, and 11) outlined in the MVR Addenda. The guilty pleas on the Condition 1 violations were based on three recent convictions: felony hit and run, misdemeanor construction fraud, and misdemeanor reckless driving. During the presentation of evidence, Jackson's counsel objected to the "relevance" of the discussion of new convictions in one of the MVR Addenda given that Jackson had already pleaded guilty to the Condition 1 violations. *See* J.A. at 76-77. The circuit court overruled the objection and admitted into evidence the MVR Addendum, as well as the probation officer's testimony in support of it.

Testimony and arguments during the revocation hearing centered on Jackson's alleged motorcycle accident and resulting injuries. The probation officer said that he was unaware of any medical "treatment" or "medication" Jackson had claimed to have received and that he had not received "any documentation from Mr. Jackson about his medical treatment." *Id.* at 79-80. Nor did the probation officer know the date of the accident. Jackson's mother testified that Jackson was in a motorcycle accident that had caused serious injuries and had required "extensive" orthopedic surgery that left him incapacitated. *Id.* at 92. For a "few weeks" after the accident, she stated, Jackson's "limbs were not working." *Id.* at 93. He also "hallucinate[d] a

3

bit" and "wasn't himself." *Id.* She added that Jackson had been living with her at the address on file with the probation office.

In his motion to strike, Jackson's counsel offered mitigating explanations for the technical violations. Relying on the testimony of Jackson's mother, counsel argued that Jackson was "living at the same house the entire time" and that the probation officer should have "attempted to find him" there. *Id.* at 101. Jackson's inability to comply with some of the probation conditions, counsel added, was potentially due to the motorcycle accident because it affected his ability to walk, work, and sleep and caused him to suffer "hallucinations for several months." *Id.* at 101-02.

In response, the prosecutor argued that the evidence proved that Jackson "didn't report or provide urine screens," "tested positive for cocaine," "didn't report his arrest," "failed to report," "failed to follow instructions," and "was certainly not cooperative." *Id.* at 104-05. On the issue of absconding, the prosecutor pointed out that a warrant for Jackson's arrest had already been issued and that Jackson had not been "compliant whatsoever." *Id.* at 107. "It was unknown where he was, other than he called and said that he was in the hospital," the prosecutor stated, and even after speaking with his probation officer again, "he still didn't show up and come in." *Id.*

The court found Jackson guilty of the Condition 1 violations (for which he had pleaded guilty) and each of the four technical violations (for which he had pleaded not guilty). The court thereafter invited counsel to address the issue of an appropriate sentence for these probation violations. The prosecutor offered into evidence Jackson's criminal record, which consisted of 20 felony convictions, including 7 convictions for felony probation violations, and 7 misdemeanor convictions.

Focusing on the technical violations, Jackson's counsel asked the court to credit the testimony of Jackson's mother asserting that he was in a "serious motorcycle accident" in April 2022 that left him "injured for months" and unable to "walk" or "work." *Id.* at 114-15. At the time of the sentencing hearing in June 2023, counsel proffered that Jackson had "finally healed enough from his injuries that he can move on with his life," *id.* at 117, and thus a lenient sentence would be warranted.

In response, the prosecutor began her argument with a procedural observation. She had "suggested" earlier that there could be "one probation violation with all the Conditions." *Id.* at 118. She then noted that Jackson's counsel had requested "separate pleas on each Condition" and "separate findings of guilt." *Id.* Jackson's counsel objected to this observation, claiming that it was an implied request for a "greater sentence" based upon Jackson "exercising his trial rights." *Id.* at 119. Inviting a response, the court asked the prosecutor, "Is that the argument you're making?" *Id.*

The prosecutor answered to the contrary, "I am arguing [that Jackson] should get a sentence consistent with what he has requested," which was to have "separate hearings on separate violations" and thus to "consider them separately." *Id.* She argued that it had "nothing to do with [Jackson] exercising his right." *Id.* Jackson had the option to plead "not guilty" and "have the hearing." *Id.* The "bottom line," the court responded, "is on the new law violations the entire 3 years and 21 months [the remaining suspended period of incarceration] is available" as punishment for the Condition 1 violation without any punishment for the technical violations. *See id.*

The court and the prosecutor exchanged remarks on the operation of Code § 19.2-306.1, with both agreeing that the statute sequences the severity of punishment based on the number of

technical violations and whether the technical violations are consolidated into a single composite violation. *See generally Commonwealth v. Canales*, 304 Va. 200, ___, 914 S.E.2d 176, 181-83 (2025); *Commonwealth v. Delaune*, 302 Va. 644, 655-57 (2023). The prosecutor insisted that she did "not choose to go this way," but rather, Jackson's "[c]ounsel did." J.A. at 120. Jackson's counsel argued that the prosecutor was "making arguments based on [her] client exercising his trial rights, which he does have in a probation violation hearing." *Id.*

The court did not address the plea-consolidation topic further. But the court did address the broader issue raised by Jackson's counsel concerning the "trial rights" of probationers. *Id.* at 119-20. "Well, at sentencing, of course," the court stated, the legislature "modified the statute and they've modified it on the sentencing guidelines form, that the Court can take into consideration in lowering the guidelines, acceptance of responsibility." *Id.* at 120. The court reasoned that, if that is true, it could be argued that "the opposite of acceptance of responsibility can be considered by the court in imposing sentence." *Id.* at 121. The court did not explain the specific nature of this consideration or any of its nuanced limiting principles.

The prosecutor elaborated on her understanding of these nuances: "If somebody pleads not guilty or they present certain things, you can absolutely argue that the sentence should be higher than if they [had] pled guilty and accepted responsibility." *Id.* at 121. Jackson's counsel objected to this formulation of the responsibility-acceptance factor. She explained her concern this way: "Truthfully, Your Honor, I did not get the argument that Your Honor should consider acceptance of responsibility in this case for the Condition 1 Violation. I do not believe that it's fair to argue [its] inverse, because he exercised his trial rights . . . on the Technical Violations." *Id.* at 122. In response, the prosecutor restated her view that "somebody who pleads not guilty and is found guilty is not in the same position as somebody who pleads guilty." *Id.*

6

The court ultimately revoked Jackson's previously suspended 4 years and 9 months and resuspended 2 years and 9 months, leaving Jackson with an active sentence of 2 years with credit for time served. Explaining its departure from the recommendation of the sentencing guidelines, the court took into account Jackson's extensive criminal history — which included 20 felony and 7 misdemeanor convictions — and a prior probation violation. The court noted that Jackson's new offenses were similar in nature and more serious than those for which he was currently on probation. The court also observed that there were "the other Conditions that were violated in this most recent attempt at probation" and that "responsibility was not taken" for these violations, noting that failing to accept responsibility "is a factor the Court can consider amidst all the others." *Id.* at 42, 130-31.

## C.

Jackson appealed to the Court of Appeals, arguing "that the circuit court improperly considered his decision to contest his technical violations as an aggravating factor at sentencing." *Jackson*, 2024 Va. App. LEXIS 499, at *1. The Court of Appeals acknowledged that a defendant's "failure to accept responsibility" can be used as "an aggravating factor at a sentencing hearing" if it describes "the defendant's 'present tense' position" at the sentencing hearing. *Id.* at *8-9. But it is never appropriate, the Court of Appeals held, when "explicitly linked to the defendant's plea of not guilty." *Id.* at *9. No sentencing court, the Court of Appeals stated, can "treat a defendant's exercise of his constitutional right to a trial as a sword against the defendant." *Id.* at *9 n.3. Finding that "the circuit court gave significant weight to Jackson's plea of not guilty and request for a trial in rendering its sentence," the Court of Appeals reversed the sentence and remanded the case for resentencing. *Id.* at *9-10.

7

## II.

On appeal, the Commonwealth contends that the Court of Appeals misinterpreted the circuit court's statements about Jackson's failure to accept responsibility for his probation violations. For the following reasons, we agree.

### A.

#### 1.

A court that convicts a defendant of a criminal offense and sentences him for the adjudicated crime cannot enhance the sentence based upon the convict's "prior claim of innocence" implicit in his "not guilty plea." *Lawlor v. Commonwealth*, 285 Va. 187, 266 (2013) (citation omitted). In this context, no punitive thumb on the sentencing scale can tip it in favor of enhanced punishment for a defendant who has done nothing more than "what the law plainly allows him to do," *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). The question presented by the parties is whether that happened here. Before answering that question, we must examine the litany of disputable nuances that accompany it.

The first is whether — and if so, how — this doctrine applies to a revocation proceeding. "The revocation proceeding, while criminal in nature, is not the same proceeding as the original trial or sentencing." *Commonwealth v. Jackson*, 267 Va. 226, 230 (2004). The convict before the revocation court has already been convicted and had a sentence imposed. As is often the case, a portion of it is "suspended" as a rehabilitative incentive for him to lead a better life or at least one free of criminality, violence, and drugs. A probationary suspension of incarceration is a judicial "act of grace" with the "remedial purpose" of "affording courts the latitude to rehabilitate the offenders before them." *Hannah v. Commonwealth*, 303 Va. 106, 119 (2024).

Despite the categorical differences between a criminal trial and a revocation proceeding, the parties and the Court of Appeals rely exclusively on judicial opinions addressing challenges to sentences imposed during criminal trials.[1] The implicit assumption is that the procedural protections are the same in both. If that is the hypothesis, there is much to say opposing it. With limited exceptions, a revocation proceeding is not subject to the full panoply of rights that accompany a criminal trial, *see Johnson v. Commonwealth*, 296 Va. 266, 275 (2018); *Henderson v. Commonwealth*, 285 Va. 318, 325 (2013) — such as the right to a jury,[2] the beyond-a-reasonable-doubt standard of proof,[3] the right to appointed counsel,[4] the exclusionary rule,[5] the

---

[1] On brief, Jackson relies on *Lawlor*, 285 Va. at 187, which reviews a trial court's sentence imposition and not a circuit court's sentence revocation. *See* Appellee's Br. at 8, 14, 17, 19-20, 26, 28-31. The Commonwealth also relies on *Lawlor* and adds *Smith v. Commonwealth*, 27 Va. App. 357 (1998), and *Jennings v. State*, 664 A.2d 903 (Md. 1995). Appellant's Br. at 1, 23, 25 (involving criminal trials and not revocation hearings); *see also* Reply Br. at 5-6, 8, 11-13. The Commonwealth cites federal cases as support, but they involve criminal trials and not revocation hearings. *See* Appellant's Br. at 23-24. The Court of Appeals relied exclusively on *Lawlor* and *Smith* as the precedential basis for its opinion. *Jackson*, 2024 Va. App. LEXIS 499, at *8-9 (citing *Lawlor*, 285 Va. at 266; *Smith*, 27 Va. App. at 362).

[2] *See* U.S. Const. amend. VI (giving a right to a jury for "criminal prosecutions"); Va. Const. art. I, § 8 (same); *Johnson*, 296 Va. at 275 (recognizing that revocation proceedings are not "stage[s] of a criminal prosecution" (citation omitted)); *Jackson*, 267 Va. at 229 ("[W]hile a revocation hearing is a criminal proceeding, it 'is not a stage of a criminal prosecution.'" (citation omitted)); *see also United States v. Knights*, 534 U.S. 112, 120 (2001); *Minnesota v. Murphy*, 465 U.S. 420, 425 n.7 (1984); *Berry v. Commonwealth*, 200 Va. 495, 499 (1959).

[3] *Samson v. California*, 547 U.S. 843, 849 (2006); *Knights*, 534 U.S. at 120; *Commonwealth v. Pannell*, 263 Va. 497, 499 (2002); *Marshall v. Commonwealth*, 202 Va. 217, 221 (1960); *Burford v. Commonwealth*, 78 Va. App. 170, 180 (2023).

[4] *Turner v. Rogers*, 564 U.S. 431, 443 (2011); *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 (1996); *Black v. Romano*, 471 U.S. 606, 611-12 (1985); *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 25-27 (1981); *Walker v. Forbes*, 292 Va. 417, 422-24 (2016).

[5] *Logan v. Commonwealth*, 279 Va. 288, 290 (2010); *Anderson v. Commonwealth*, 251 Va. 437, 440 (1996); John L. Costello, Virginia Criminal Law and Procedure § 39.1, at 623 (4th ed. 2008); 1 John Wesley Hall, Jr., Search and Seizure § 9.16, at 9-35 (5th ed. 2013); 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.6(g), at 273-74 (6th ed. 2020).

felony indictment requirements,[6] the Sixth Amendment right of confrontation,[7] the Fifth Amendment right against self-incrimination,[8] or the rules governing hearsay evidence.[9]

For present purposes, we will not decide whether and to what extent the failure-to-accept-responsibility factor should be applied to a revocation proceeding.[10]  Given the absence of briefing on this threshold issue, we will assume arguendo that it applies no differently to a revocation hearing than to a plenary criminal trial.  Even with that rather generous assumption, we conclude that the Court of Appeals erred in applying it here.

2.

Our strongest statement of the failure-to-accept-responsibility doctrine can be found in *Lawlor*, 285 Va. at 263-67, a unanimous opinion issued in a death penalty case.  A jury recommended that the defendant, convicted of capital murder, be executed.  Accepting that

---

[6] *Contrast Commonwealth v. Bass*, 292 Va. 19, 28 (2016) (noting that, absent waiver, "felony prosecutions" are required to "proceed by indictment or presentment"), *with Black*, 471 U.S. at 612 (requiring only "written notice of the claimed violations of his probation"), *and Henderson*, 285 Va. at 325-26 (noting the requirement of written notice of alleged probation violations).  *See generally* 6 Wayne R. LaFave et al., Criminal Procedure § 26.10(b), at 1147 (4th ed. 2015) [hereinafter 6 Lafave et al., Criminal Procedure].

[7] *Black*, 471 U.S. at 611-12; *Johnson*, 296 Va. at 275; *Henderson*, 285 Va. at 325-26; *Jenkins v. Commonwealth*, 71 Va. App. 334, 343 (2019); *Saunders v. Commonwealth*, 62 Va. App. 793, 807-10 (2014); *Dickens v. Commonwealth*, 52 Va. App. 412, 421-22 (2008); Kent Sinclair, The Law of Evidence in Virginia § 1-6[c][7], at 3 (8th ed. Cum. Supp. 2024).

[8] *See Murphy*, 465 U.S. at 435 & n.7 ("Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer."); *see also* 6 LaFave et al., Criminal Procedure, *supra* note 6, § 26.10(c), at 1155.

[9] *Henderson*, 285 Va. at 326; *Jenkins*, 71 Va. App. at 343; *Harper v. Commonwealth*, 54 Va. App. 21, 31 (2009); *Hess v. Commonwealth*, 17 Va. App. 738, 742 (1994); *Davis v. Commonwealth*, 12 Va. App. 81, 84 (1991); Sinclair, *supra* note 7, § 1-6[c][7], at 3.

[10] "We do not permit litigants 'to define Virginia law by their concessions,'" *Butcher v. Commonwealth*, 298 Va. 392, 395 (2020) (citation omitted), but "we may accept the concession — not as a basis for deciding the contested issue of law, but as a basis for not deciding it," *Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc).

recommendation and ordering the execution, the circuit court explicitly stated that it considered the defendant's remorseless "defense strategy" of claiming his innocence during the liability phase of the trial. *Id.* at 265-66. We held this to be clear error: "While it is proper for a court to consider a defendant's 'present tense refusal to accept responsibility, or show remorse,' it may not be linked to his 'prior claim of innocence or not guilty plea or exercise of his right to remain silent.'" *Id.* at 266 (emphasis and citations omitted).[11]

Lacking any binding Virginia precedent on point, *Lawlor* adopted the persuasive reasoning of two Maryland cases, *Jennings v. State*, 664 A.2d 903, 907-08 (Md. 1995) (contrasting impermissible and permissible uses of "acceptance of responsibility" as the "first step in rehabilitation"), and *Saenz v. State*, 620 A.2d 401, 403-07 (Md. Ct. Spec. App. 1993) (discussing the permissible use of lack of remorse as a factor at sentencing). *Lawlor* also found convincing Chief Judge Fitzpatrick's opinion in *Smith*, 27 Va. App. at 362-63, which also relied on *Jennings* and *Saenz*. These opinions restate well the indisputable premise that "after the defendant has been convicted, the judge must proceed upon the basis that the defendant is guilty." *Saenz*, 620 A.2d at 406 (citation omitted); *see also Smith*, 27 Va. App. at 361-63 (discussing post-*Alford* plea sentencing and the ability of the court to "treat the defendant, for

---

[11] Despite the trial court's flawed reasoning, *Lawlor* held it was not reversible error because "[i]t is clear from the record that in evaluating that question the court considered and gave the greatest weight" to other legally "proper factors for the court's consideration." 285 Va. at 266-67. This reasoning tracks the harmless-error doctrine — a required consideration "in all cases" involving trial error on appeal. *See generally Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 853 (2019); *Commonwealth v. White*, 293 Va. 411, 420 (2017). In Jackson's case, the Commonwealth argues that, if the court erred at all, it was harmless because (as the court noted) the entire amount of the suspended sentences could have been imposed solely because of Jackson's new criminal convictions. *See* J.A. at 119; *see also id.* at 54-55, 128-31; Appellant's Br. at 29. Given our ruling, however, it is unnecessary for us to determine whether the harmless-error doctrine applies to these circumstances.

purpose of sentencing, as if he or she were guilty" despite these pleas not involving "an express admission of guilt" (citation omitted)).

3.

Applying these principles to Jackson's revocation case, we must first discern what the circuit court meant by its observation that "responsibility was not taken" by Jackson for some or all of his technical probation violations. J.A. at 42, 130-31. The starting blocks for this interpretative task are immovable. Today, as in years past, "nothing is better settled than that everything is to be presumed in favor of the correctness of the rulings of a court of competent jurisdiction, when brought under review in an appellate tribunal, until the contrary is shown." *Early v. Commonwealth*, 86 Va. 921, 925 (1890).

This presumption forbids us from "fix[ing] upon isolated statements of the trial judge taken out of the full context in which they were made" and thereafter using these statements "as a predicate for holding the law has been misapplied." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)); *see also Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 217 (2023). The circuit court's statements about Jackson's failure to accept responsibility, therefore, should be viewed in their full context.

At the highest level of generality, the idea that Jackson truly accepted responsibility for his criminality — "the first step in rehabilitation," *Jennings*, 664 A.2d at 908 — is questionable at best. His track record for accepting responsibility consists of 20 felony convictions (including several probation violations) and 7 misdemeanor convictions. Whether he pleaded guilty or not guilty to the most recent set of technical probation violations seems trivial in the broader context of his 37-year criminal record. Had the court wanted to do so, it could have imposed all of Jackson's remaining unserved time (4 years and 9 months) based on his new criminal

12

convictions without even mentioning his technical probation violations. *See supra* note 11. While this observation does not answer the specific question before us, it certainly puts it in perspective.

B.

Narrowing the focus to the literal statements of the circuit court does not strengthen Jackson's argument. The first challenged statement — "the opposite of acceptance of responsibility can be considered by the Court in imposing sentence," J.A. at 121 — is a logical corollary of the view that acceptance of responsibility can be considered. Remorseful acceptance of responsibility serves as a mitigating factor to potentially reduce whatever sentence would be applied if there had been no such contrition. *See Lawlor*, 285 Va. at 266; *Smith*, 27 Va. App. at 363; *Jennings*, 664 A.2d at 908; *Saenz*, 620 A.2d at 407. It follows that the inverse is also true: The failure to accept responsibility or to show concomitant remorse means that as far as either of these factors go, no mitigation of the otherwise appropriate sentence would be considered. *See Jennings*, 664 A.2d at 908-10; *Saenz*, 620 A.2d at 405-07.[12] But that is not the same thing as saying that a presumptively proper sentence should be enhanced as a means of punishing a criminal defendant for pleading not guilty to the charges.

---

[12] Federal courts follow analogous principles in the application of the Federal Sentencing Guidelines. *See*, *e.g.*, *United States v. Alford*, 89 F.4th 943, 954 (D.C. Cir. 2024); *United States v. Broxmeyer*, 699 F.3d 265, 284 (2d Cir. 2012); *United States v. Smith*, 40 F.3d 933, 935-36 (8th Cir. 1994); *United States v. Osmani*, 20 F.3d 266, 269-70 (7th Cir. 1994). Similarly, Virginia's voluntary guidelines, Code § 19.2-298.01, recognize "[a]cceptance of [r]esponsibility" and "[e]xpression of [r]emorse" as mitigating sentencing factors. *See* Virginia Crim. Sent'g Comm'n, Virginia Sentencing Guidelines app. D, at 2 (28th ed. 2025). The Virginia Probation Violation Guidelines, which are also discretionary, Code § 19.2-306.2, are broader and allow mitigation for "good rehabilitation potential," Virginia Crim. Sent'g Comm'n, Virginia Sentencing Guidelines: Sentencing Revocation Report and Probation Violation Guidelines 40 (6th ed. 2025) [hereinafter Virginia Probation Violation Guidelines].

The logic of mitigating a potential sentence presupposes a baseline, one that makes no assumption about the case-specific mitigating or aggravating factors. Within the sentencing ranges established by the General Assembly, Virginia courts have wide discretion to determine the duration and conditions of a criminal sentence. *See Du v. Commonwealth*, 292 Va. 555, 563-64 (2016); *Delaune*, 302 Va. at 657. The Virginia Sentencing Guidelines and Probation Violation Guidelines provide a practical starting point for such decisions. These guidelines encourage courts to reward contrite criminals. *See* Virginia Probation Violation Guidelines, *supra* note 12, at 40 (allowing modification "if the judge determines that the defendant has good rehabilitation potential").

It was not only logical, but prudent, for the circuit court in this case to observe that "the opposite of acceptance of responsibility can be considered by the Court in imposing sentence." J.A. at 121. If Jackson showed no signs of accepting responsibility, it would leave his unmitigated punishment where it presumptively was from the start. The circuit court's first statement, therefore, did not explicitly or implicitly assert that the sentence would be enhanced as punishment for Jackson's plea of not guilty. Read in this context, this statement can be fairly understood as simply withholding any mitigating impact on a baseline sentence.

## C.

The Court of Appeals also found fault with a second statement made by the circuit court. After reciting Jackson's extensive criminal history and the similarity between the new offenses and prior convictions, the circuit court added that it was considering "the other Conditions that were violated in this most recent attempt at probation" and that "responsibility was not taken" for these violations, noting that this is "a factor the Court can consider amidst all the others." *Id.* at 42, 130-31. Jackson interprets this statement not simply as an explanation for declining to

reduce the sentence but rather one for imposing an enhanced sentence. We will assume arguendo that he is correct. That does not mean that the circuit court erred.

As we recognized in *Lawlor*, the dividing line between appropriate and inappropriate consideration of this factor has been stated persuasively by the Maryland courts. *See Lawlor*, 285 Va. at 266 (citing *Jennings*, 664 A.2d at 910; *Saenz*, 620 A.2d at 407). A "trial court's present tense observation of a defendant's lack of remorse, so long as it is not explicitly linked to a defendant's prior claim of innocence or not guilty plea or exercise of his right to remain silent, is an appropriate factor to consider at sentencing." *Saenz*, 620 A.2d at 407; *see also Jennings*, 664 A.2d at 909 (reaffirming the "explicit reference" standard applied in prior precedent).

If this explicit-reference line is not crossed by a sentencing court, it is "perfectly acceptable" to recognize that "lack of remorse is an appropriate sentencing consideration inasmuch as acceptance of responsibility is the first step in rehabilitation." *Jennings*, 664 A.2d at 908. "Among those factors used to determine a defendant's potential for rehabilitation is his or her manifestation of social conscience and responsibility through contrition, repentance, and cooperation with law enforcement agencies." *Id.* (citation omitted); *see also Smith*, 27 Va. App. at 362-63 (citing *Jennings*, 664 A.2d at 908; *Saenz*, 620 A.2d at 407).

The circuit court's statement during the sentencing phase of this case — observing that "responsibility was not taken" by Jackson for his actions and inactions "in this most recent attempt at probation," J.A. at 42, 130-31 — does not include any explicit linkage to Jackson's not-guilty plea or his right to remain silent. The statement was made in response to the arguments of Jackson's counsel during the sentencing phase of the hearing and the evidence counsel earlier offered to put the blame on the probation officer for Jackson's multiple no-shows.

All of this involved a series of excuses that the sentencing court was free to discount altogether or to view as exaggerations.

Counsel sought to excuse Jackson's multiple no-shows and his chronic failure to respond to his probation officer by relying on the uncorroborated claim by Jackson's mother that he was "injured for months" and unable to "walk" or "work." *Id.* at 114-15. Even if that were true, Jackson could have maintained contact with his probation officer by phone. Instead of doing that, he spent his alleged period of total disability committing new crimes, including felony hit and run, misdemeanor construction fraud, and misdemeanor reckless driving. These facts undermine Jackson's brief statement that he "accept[ed] responsibility" for his actions and hoped that the circuit court would give him "the opportunity for one last time." *Id.* at 128.

Sitting as factfinder, the court deemed Jackson to be a poor candidate for rehabilitation and factored that regrettable reality into its sentence. The court's finding that "responsibility was not taken" by Jackson for his actions and inactions "in this most recent attempt at probation," *id.* at 42, 130-31, was not an explicit reference to Jackson's not-guilty pleas. Instead, it appears to have been a "present tense," *Lawlor*, 285 Va. at 266 (emphasis and citation omitted), acknowledgement that Jackson was either unwilling or unable to satisfy the threshold predicate for successful rehabilitation. The court cannot be faulted for considering this factor. Along with "retribution," "deterrence," and "incapacitation," the possibility, if any, of genuine "rehabilitation" is one of the four "sometimes-competing goals of punishment" that a sentencing court should consider in every criminal case involving the exercise of discretionary sentencing. *Johnson-Bey v. Commonwealth*, 303 Va. 386, 397 (2024) (quoting 1 Jens David Ohlin, Wharton's Criminal Law § 1:1, at 2-3 (16th ed. 2021) (footnotes omitted)). Jackson's attempt to recast the court's remarks as a judicial rebuke for pleading not guilty to the technical probation

16

violations is too strong an accusation given their doctrinal context, the arguments of counsel, and the evidence before the court.

## III.

In sum, the circuit court did not abuse its discretion in sentencing Jackson for his probation violations. Acting within the boundaries of its discretion, the court took into account Jackson's failure to accept responsibility for his probation violations and fashioned a sentence that viewed with skepticism the likely success of further rehabilitation efforts.

*Reversed and final judgment.*